## BROOKS' AND JOSEPH'S APPEAL IN THE MATTER OF WIDENING KEARNY STREET.

NEW TRIAL.—The rule laid down in *Piper's Appeal, ante*, 530, as to granting a new trial on the ground that the judgment is not warranted by the evidence, affirmed.

SPECIFICATION OF OBJECTIONS TO CONFIRMING A REPORT.—A specification in an objection to the confirmation of the report of the Commissioners appointed to estimate benefits and assess damages to lot owners for widening Kearny street, in San Francisco, that " the Commissioners have assessed some lots far beyond, and others much below the proper sum," is too general to admit proof that a lot in which the objector had no interest was assessed relatively too low in comparison with another lot in which the objector has no interest.

COMPETENCY OF WITNESS ON TRIAL ABOUT CONFIRMING REPORT.—A Commissioner appointed to estimate benefits and assess damages to lot owners in the matter of widening a street in a city, is a competent witness on a trial in the County Court upon the question of confirming the report of the Commissioners when objections are made to it.

APPEAL from the County Court, City and County of San Francisco.

The main facts in this case are the same as in *Piper's Appeal, ante*, 530.

Brooks and Joseph were the owners as tenants in common of a lot on the northwest corner of Kearny and Pacific streets, and Joseph was the owner of two lots, one on the westerly line of Kearny street, forty-eight feet six inches southerly

from the southwest corner of Kearny and Broadway streets, the other on the easterly line of Kearny street, eighty feet northerly from the northeasterly corner of Kearny and Pacific streets.   The Commissioners estimated the benefits that would accrue and the damages that would be sustained by each lot and the buildings thereon.   The appellants filed objections to the report, and it was stipulated that the objections of Brooks and Joseph, and of Joseph individually, should be heard and tried together.   The County Court confirmed the report.   The objectors appealed.

The other facts are stated in the opinion of the Court.

*William Hayes*, for Appellants.

On the question of damages the evidence was overwhelming against the amount allowed by the Commissioners, and there is no such conflict as to bring it within the rule heretofore adopted by this Court.   (*Carpentier* v. *Gardiner*, 29 Cal. 164; *Plate* v. *Vega*, 31 Cal. 383.)   A decision in disregard of the proof will be treated as founded in some erroneous view of the law applicable to the case.   (3 E. D. Smith, 121.)   The County Court erred in refusing to allow the objectors to prove that the lot on the corner of Sacramento and Kearny streets had been assessed for almost as much as the lot on the northwest corner of Kearny and Post streets, and that if the lot on the corner of Sacramento and Kearny streets should have been assessed, as in fact it was, at twenty thousand three hundred and thirty-five dollars, the lot on the corner of Post and Kearny streets should have been assessed at seventy-five thousand dollars, and that the actual assessment of twenty-one thousand four hundred and thirty-seven dollars and fifty cents on the lot on the corner of Post and Kearny streets was too low.   The Commissioners exercised judicial powers.   They ought not to have been permitted to prove the performance of any act by parol.   The only proper evidence was the record of their minutes and proceedings.   The County Court therefore erred in admitting the testimony of E. N. Torrey, one of the Commissioners, and overruling the objections thereto.

(Laws 1863-4, p. 350, Sec. 7; *Jackson* v. *Daly*, 5 Wend. 526; *Meeker* v. *Van Rensselaer*, 15 Id. 397; *Hallock* v. *Woolsey*, 23 Id. 328; see, also, *Wood* v. *Byington*, 2 Barb. Ch. Rep. 394; *Lawrence* v. *Houghton*, 5 John. 129; *Posson* v. *Brown*, 11 Id. 160; *Brown* v. *Laine*, 10 Wend. 525.)

*A. Campbell*, for Respondent.

Appellants have nothing to do with the lots on corner of Post and Kearny, or Sacramento and Kearny streets. If appellant had intended to complain that any were assessed too low, he should have stated them in his complaint, so that respondent could have had notice, and could have been prepared to meet the case. There are no allegations in the complaint sufficient to admit the testimony. Out of the several hundred assessments, respondent would be wholly in the dark as to which were assessed too low. Appellant cannot complain that others are assessed too high—it is for his benefit. The Commissioners were not called to give judicial opinions, but to state facts; what they did, and how they did it. They do not give in evidence the testimony produced before them; they state the amount of damages and benefits, and how they arrived at them. The general policy is now to admit all, even parties interested, to testify—Brooks and Joseph both testified—either a Judge or a jury can be called (1 Phillips on Ev. 7), and this while the old strict rules were in force. The Commissioners are appointed to no judicial office and exercise no judicial functions.

By the Court, SAWYER, J.:

In this case the record presents the same questions which were determined in *Piper's Appeal, ante*, 530, and the principles stated in the opinion in that case, so far as they are applicable, must control this. In this case the principal ground of complaint is, that the amount allowed for damages for the twenty-nine feet some inches taken from appellants' lots to be added to the width of the street is too small, and

the strain of the testimony and argument bears most strongly upon this question.   The principles stated in *Piper's Appeal* apply as well to this precise question as to the amount of benefits, absolute and relative, and need not be repeated. Aside from the report of the Commissioners, there is a wide difference in the opinions of the witnesses as to the value of the property and the amount of damages sustained.   Among witnesses who have long been in business connected with the sale and renting of real estate in San Francisco, and who profess to be acquainted with the value of such property, the estimates of the value of the strip taken from the lot on the corner of Pacific and Kearny streets varies from six thousand five hundred dollars to thirty-three thousand dollars.   But one of the numerous witnesses, however, besides the appellants themselves, place it so high as eighteen thousand dollars, and the range of the evidence of appellants' witnesses is considerably below that sum.   There is a wide discrepancy in the testimony of the same witnesses of appellants as to the relative value of the strip taken from two adjacent lots.   As, for instance, Carter, who puts the value of the strip taken from the corner lot at the highest figure of any witness not a party to the appeal, except one, estimates it at eighteen thousand seven hundred fifty-five dollars, and the value of the strip taken from the next lot on the north at two thousand one hundred seventy-five dollars; while Blood, a witness of appellants, estimates the same damages at thirteen thousand seven hundred fifty dollars for the first named lot, and five thousand dollars for the second; and Middleton, another of appellants' witnesses, estimates the damages to the first lot at twelve thousand dollars, and to the second, at two thousand seven hundred dollars.   Thus, with respect to the two strips of land fronting on Kearny street taken from adjacent lots, Carter makes the second about one ninth the value of the other; Middleton not quite one fourth; and Blood between one third and one half.   But we do not propose to analyze or discuss the testimony at length.   These circumstances are only alluded

71

to as further illustrations of the very uncertain and unsatisfactory character of mere crude and hastily formed opinions as testimony. Several of the appellants' witnesses had been consulted and their views considered by the Commissioners before making their report. It is quite apparent, also, that the witnesses generally examined on both sides had devoted very little time to a consideration of this particular matter, and several of them intimate as much. If we average the testimony it will be found, it is true, that the average result attained by the entire number of witnesses will be considerably above the amount allowed by the Commissioners; but the Commissioners bestowed much more time and study on the question, as well as availed themselves of the opinions and experience of others; and, when we consider the testimony of the witnesses, there was a real, substantial and not a mere apparent conflict in the evidence, which brings the case clearly within the rule established in the practice of appellate Courts stated in *Piper's Appeal.*

Several witnesses, besides those who testified to the same effect in *Piper's Case,* also testified that the ratio of benefits would be the same as the ratio of the value of the lots throughout the whole portion of the street widened. Indeed, on this issue the testimony seems, in this case, to be so nearly in consonance with the views of the Commissioners that the point is not very much pressed.

The appellants offered to prove that the lot on the corner of Post and Kearny streets was assessed for benefits too low, as compared with the assessment upon the lot at the corner of Sacramento and Kearny streets, and the testimony was excluded on the objection of respondent. The appellants do not appear to be interested in either of these lots. The specification in the objection to the report under which this testimony is claimed to be admissible is in the very general terms, "That in assessing the benefits, as aforesaid, the Commissioners have assessed some lots far beyond, and others much below, the proper sum." We think this too general. If the objectors claimed that some lots were assessed too low in comparison with

others, they should have specified the lots in respect to which they supposed themselves aggrieved, so that the city could come prepared to meet the objection.   It was their business to point out the real grounds of their complaint.   The city should not be compelled to come to the trial before the County Court, prepared to defend the assessment on each and every one of several hundred lots without knowing upon which point the attack would be made.   Such a requirement would be an intolerable burden.   We think the Court properly excluded the testimony on that ground.   Besides, the appellants had no concern with the relative assessment between those two lots.   If neither of them was assessed too low relatively to the assessment upon their own lots, they were not injured.   They did not propose by this testimony to show that either was assessed relatively too low with respect to their own, or even that their own was assessed relatively too high with respect to any other.   Nor does the fourth specification in their objection before cited, under which this testimony is claimed to be admissible, state that their own lots were in any respect assessed for benefits relatively too high.   The specification is that "the Commissioners have assessed some lots far beyond, and others much below, the proper sum"—not that theirs is assessed too high. Unless their assessment is too high, they cannot be injured in this respect.   For this reason, also, the testimony was inadmissible.

The last point made is, that the Court erred in permitting Torrey, one of the Commissioners, to testify.   We know of no legal principle which rendered Torrey incompetent to testify upon the matter in issue before the County Court.   He was not called for the purpose of proving by secondary evidence the contents of the Commissioners' report, and the authorities cited to the point by appellants are wholly inapplicable. There was no occasion to prove the contents of the report.   It was before the Court already, and showed upon its face the results attained, and the very objections under consideration were based upon it.   The witnesses of appellants not only

testified to the value of the land taken, and the damages sustained, but they explained how they made their estimates, and the process by which they arrived at their results. Mr. Torrey's testimony in this case was mainly directed to a similar statement of the process by which he would make, and did make, his estimates, and arrived at his results. This was matter not required to be shown by the report. The appellants could in no way be injured by it. On the contrary, it afforded them an opportunity, which they did not before have, to cross-examine the witness, examine the *modus operandi* and expose the fallacy of the process, if any there was. It was advantageous, rather than injurious, if there was any error in the process. If there was no error in it, of course no injury could result. It is a mistake to regard these gentlemen in the character of partisans, and, therefore, as disqualified, even if partisanship were a disqualification. They were originally chosen, in part, at least, because they were supposed to be wholly disinterested and impartial, and we think it highly proper that they should go upon the stand as witnesses, and shed such additional light upon the subject as their knowledge of the facts might enable them to afford. The appellants themselves testified, and several of the witnesses called by them were personally interested in having the report set aside, and were opposing the confirmation in other proceedings upon objections of their own, and the others called by them were, doubtless, such as were found upon inquiry to entertain opinions most favorable to their side of the question. Such would naturally be the case. We think there was no error in admitting the testimony of Mr. Torrey.

We think the order of the County Court confirming the Commissioners' report must be affirmed, and it is so ordered.

Neither Mr. Justice RHODES nor Mr. Justice SANDERSON expressed any opinion.